**Corbitt GIBSON, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 23, 1956.

Reeharing Denied June 15, 1956.

Elmer Drake, Lexington, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

HOGG, Judge.

Appellant was convicted of the common law offense of attempting to commit murder by placing a packaged time bomb, a deadly weapon, in a mail box where Phyllis Jean Gibson received her mail. His punishment was fixed at a fine of $2,500 and imprisonment in the county jail · for one year. On his appeal he urges a reversal because (1) he was entitled to a directed verdict of not guilty and (2) prejudicially incompetent evidence was permitted to go to the jury.

Appellant and Mrs. Gibson had been husband and wife for several years prior to the time they were divorced in November of 1954. Custody of their two small children was granted to the mother. At the time and for some time before the divorce was granted, they had lived in Fayette County. They had formerly resided in Morgan County, Kentucky, but had moved from there about two years before the date they were divorced. After the divorce was granted, appellant went back to Morgan County to live in his father's home, and Mrs. Gibson remained with her children in Fayette County. At the time of the event with which we are concerned, the children were with their father in Morgan County.

The entire testimony for the Commonwealth is circumstantial. Mrs. Gibson testified that on the morning of December 16, 1954, at about 10:45, she found a heavy package addressed to her in her mail box near where she lived. It had not been mailed. She took it home where she unwrapped it and discovered a black and white metal box, which she recognized as one that had been in her home in Morgan County before they had moved. Upon opening the lid to the box she discovered two sticks of dynamite attached to some wires, whereupon she immediately took the box to the back yard and called the police officers. Shortly after the officers arrived the dynamite exploded, killing two dogs, breaking several window panes in her home, and otherwise damaging the house. She testified that she recognized the box containing the explosives because she had used the box while she lived in her house in Morgan County. She had not seen the box since she moved from Morgan County about two years before the explosion. Their household goods had remained in the house in Morgan County and two different families had lived in the house since the time they had moved from Morgan County.

Mrs. Gibson further testified that she and her husband had lived in Ohio for a short time. While they were driving to Kentucky for a visit, her husband threatened to wreck the car and "kill all of us." This occurred about a year before they came back to Kentucky to live. On another occasion, in September of 1954, her husband came to the Parkette Restaurant where she was working and during a conversation with him she saw accused raise his hand with an open knife in it. Three weeks before the explosion, he came to her home in Fayette County and asked her to come back to live with him. At this time he also threatened to kill her. This was the last time she had seen him in Fayette County, and, so far as the record shows, this was the last time he had been there prior to the explosion.

We have given a fair résumé of all the evidence the Commonwealth introduced in this prosecution, except the evidence of the

police officers who were at the home at the time the explosion occurred. Their evidence merely corroborated the testimony of Mrs. Gibson as to the explosion and its consequences. When the evidence for the Commonwealth had been introduced, appellant asked the court to direct the jury to find him not guilty, but the court declined to do so.

Appellant testified that he had lived in his father's home in Morgan County since the divorce was granted in Fayette County in November of 1954; that the last time he was in Fayette County was December 3, 1954, when he went to see Mrs. Gibson to get permission to take the children home with him for a visit; that on Tuesday night, December 14, he left his home, went to Mt. Sterling, and returned home about 7:30 on the morning of the 15th; and that he never left his home in Morgan County again until about noon on Thursday, December 16, the day of the explosion, when he went to Mt. Sterling with Mr. Nickel to take a load of tobacco to the market. This testimony was corroborated by other witnesses. It was while he was in Mt. Sterling on this last trip that he learned from the paper that the explosion had occurred and that his name had been mentioned in connection with it. Thereupon, he voluntarily presented himself to the police in Mt. Sterling and told them he was the man they were "talking about in the paper." This was on Friday, December 17, the day after the explosion. He testified that he and Nickel, after delivering the tobacco on the 16th, had remained over night in Mt. Sterling and had made preparation to return to Morgan County when he learned of the explosion. Appellant denied having any connection whatsoever with the explosion. He denied making any threats against his wife, although he admitted they had quarreled.

■ There is no doubt that some vicious person desired to kill Mrs. Gibson. A dastardly crime was committed. However, it seems to us that there is nothing more than conjecture, surmise, and suspicion to connect appellant with the crime. The evidence for the Commonwealth fails to place appellant anywhere in Fayette County for a period of three weeks before the explosion. Some suspicion is cast toward appellant from the fact that Mrs. Gibson identified the box in which the explosives were placed as being the box she had used in their home in Morgan County until they had moved about two years before the explosion. But she further testified that two different families had occupied their former home in Morgan County after they had moved from it, and she had not seen the box since that time. The identification of the box, under the circumstances, is not a fact or circumstance which would tend to prove the guilt of the accused. The threats made by accused are evidence tending to show his state of mind toward Mrs. Gibson and a motive for the perpetration of the crime. These facts alone do not conduce to prove the actual perpetration of the crime. One cannot be subjected to the penalties of the criminal law upon mere speculation and suspicion. There must be some tangible evidence of his guilt. The defendant may be guilty of this very repulsive crime, but it is equally abhorrent to the American way to contemplate the visitation of punishment upon one who is not proven to be guilty of the crime with which he is charged.

■ We have written many times that circumstantial evidence is not sufficient if it only creates a suspicion, or if it does not form a complete chain and point directly to the guilt of the accused. And, if the evidence offered as bearing on his guilt may be reconciled with the presumption of innocence, it must be done. We are constrained to say that the evidence relied upon to convict appellant is as consistent with his innocence as with his guilt, and it was the duty of the lower court to instruct the jury to find appellant not guilty. Fyffe v. Commonwealth, 301 Ky. 165, 190 S.W.2d 674, and cases therein cited.

It is unnecessary to comment on ground two.

The motion for the appeal is sustained and the judgment is reversed for proceedings not inconsistent with this opinion.

CAMMACK and STEWART, Judges (dissenting).

Under our view of the case, the record contains evidence of probative value sufficient to submit the question of the appellant's guilt to the jury, and to support the verdict returned.